UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMES SELF, ET AL. | CIVIL ACTION NO. 19-0927 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BPX OPERATING, CO., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion for Partial Dismissal filed by Defendant, BPX Operating Company ("BPX"). See Record Document 9. BPX's motion is narrowly drawn and seeks dismissal of Plaintiffs' primary claim that post-production costs are *per se* improperly deductible as a matter of law in this matter. See id.; see also Record Document 63. More specifically, BPX is challenging the claim that the operator's post-production costs incurred in the sale of unleased mineral owners' ("UMO") pro rata share of the proceeds of the sale of production – all pursuant to La. R.S. 30:10(A)(3) – are not properly chargeable to UMOs.[1] See Record Document 9. The motion is opposed by Plaintiffs James and Wilma Self ("the Selfs"). See Record Document 17. BPX has filed a reply and supplemental briefing. See Record Documents 23 & 63. For the reasons set forth below, BPX's motion is **GRANTED** and the Court holds that the doctrine of *negotiorum gestio* – as set forth in Louisiana Civil Code Article 2292, *et seq.* – governs the quasi-contractual relationship between an operator and UMO, thereby providing the

---

[1] The primary claim of the Plaintiffs is separate and distinct from their alternative claims about the reasonableness of post-production costs. Such alternative claims include (1) the recovery of costs associated with gathering and transportation volume commitments which Plaintiffs claim were improperly deducted from the pro rata share of revenue attributable to their unleased interests and (2) the recovery of costs allegedly improperly deducted from Plaintiffs' interests derived from a Gas Gathering Agreement between BPX's predecessor and third parties. See Record Document 63 at 14.

mechanism for reimbursement of post-production costs incurred by an operator to market the UMO's gas.

## BACKGROUND

The Selfs filed the instant action as purported representatives of a named putative class of UMO plaintiffs who own unleased mineral interests in the State of Louisiana which are situated within compulsory drilling units formed by the Louisiana Office of Conservation and operated by BPX. See Record Document 1-3 at ¶1. As to the Selfs, the subject unit is HA RA SUE Unit in Section 11, Township 13 North, Range 10 West, Bracky Branch Field, Red River Parish ("HA RA SUE Unit"). See id. at ¶ 20. The subject well for the AH RA SUE Unit is the Nichols, et ux 11H-2, LA Serial No. 243945. See id. The Selfs own a tract of land within the HA RA SUE Unit. See id. at ¶ 21. Similarly, members of the putative class own tracts of land, and/or rights to explore for and produce minerals therefrom, situated in other compulsory drilling units. See id. at ¶ 22. Again, BPX is the operator for all of the unit wells at issue. See id.

Neither the Selfs nor the class have made separate arrangements to dispose of their allocable shares of production from the units. See id. at ¶ 2. BPX, as operator of the units, has opted to market, on behalf of the Selfs and the putative class members, each UMO's proportionate share of production. See id. at ¶ 3. La. R.S. 30:10(A)(3) provides:

> If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator *shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production* within one hundred eighty days of such sale.

La. R.S. 30:10(A)(3) (emphasis added).  The Selfs allege that BPX has failed to pay them and the class their pro rata share of the proceeds of the sales of production from the units in which they own unleased mineral interests.  See Record Document 1-3 at ¶ 5.  The Selfs allege that BPX has been improperly deducting against the sale proceeds certain post-production costs and that such practice is improper *per se*.  See id. at ¶ 6.  They seek declaratory and permanent injunctive relief to enjoin BPX from deducting post-production costs from their allocable shares of production proceeds under Section 10(A)(3).  See id. at ¶ 36.  They also seek damages equal to the total amount of post-production costs improperly deducted from/charged to the share of proceeds.  See id.

BPX filed the instant motion seeking dismissal of Plaintiffs' primary claim that post-production costs incurred in the sale of UMOs' pro rata share of the proceeds pursuant to La. R.S. 30:10(A)(3) are not properly chargeable to UMOs.  In March 2020, the instant motion was set for oral argument on May 7, 2020.  See Record Document 24.  The oral argument in this matter was set in conjunction with oral argument in Allen Johnson, et al. v. Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543, as both cases raised the same legal issue regarding the interpretation of La. R.S. 30:10(A)(3).  In April 2020, due to the COVID-19 pandemic, the Court reset oral argument for July 21, 2020.  See Record Document 32.  Again, due to the COVID-19 pandemic and also because of the bankruptcy proceedings involving various Chesapeake entities, oral argument was reset for October 21, 2020.  See Record Document 45.  Oral argument as to this case alone was held on October 21, 2020 and supplemental post-argument briefing was filed in November 2020.  See Record Documents 58 & 63.  Oral argument in the Allen Johnson, et al. v.

Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543, matter was not held until March 2021.

## LAW AND ANALYSIS

**A.     Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now the "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S.Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible

under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 550 U.S. at 558, 127 S.Ct. at 1966 (citations omitted).

**B.    Relevant Statutory and Codal Schemes.**

Louisiana is one of many states that has forced pooling laws. Louisiana's Commissioner of Conservation may join separate tracts of land into a forced drilling unit "whenever necessary to prevent waste or avoid needless drilling, even if owners of oil and gas interests have not agreed to pool their interests." TDX Energy, L.L.C. v. Chesapeake Operating, Inc., 857 F.3d 253, 257 (5th Cir. 2017), citing La. R.S. §§ 30:9(B), 30:10(A)(1).[2] Once a unit has been established, the Commissioner may appoint an operator to extract oil and gas from a reservoir. See id., citing Hunt Oil Co. v. Batchelor, 93-3144 (La. 10/17/94), 644 So. 2d 191, 196. "The operator is responsible for drilling within the unit but pays a proportionate share of production to owners of oil and gas interests for any acreage on which the operator does not have an oil and gas lease." Id. at 257-258, citing La. R.S. § 30:10(A)(1)(b); Amoco Prod. Co. v. Thompson, 516 So. 2d 376, 392 (La. App. 1st Cir. 1987).

"As a corollary to this scheme for sharing the benefits of unit production in the absence of a contract, Louisiana law contains mechanisms for sharing drilling risks and costs." TDX, 857 F.3d at 258. Section 30:10(A)(2) provides:

---

[2] La. R.S. 30:10 governs agreements for drilling units and pooling interests.

> In the event pooling is required, the cost of development and operation of the pooled unit chargeable to the owners therein shall be determined and recovered as provided herein.

"To prevent free riding, the statute creates a mechanism for sharing the risk that a well, once drilled, will not produce enough to cover drilling costs." TDX, 857 F.3d at 258. "The operator gives notice to oil and gas interest owners regarding the drilling of a well, allowing owners to elect to participate in the risk by contributing to drilling costs up front." Id., citing § 30:10(A)(2)(a)(i). "If an owner does not participate, and the well produces, the operator can recover out of production the nonparticipating owner's share of expenditures [i.e., the actual reasonable expenditures incurred in drilling, testing, completing, equipping, and operating the unit well, including a charge for supervision], along with a risk charge of two hundred percent of the owner's expenditure share." Id., citing La. R.S. § 30:10(A)(2)(b)(i). However, Section 10(A)(2)(e) later provides that completely unleased mineral owners are exempt from the risk charge. See La. R.S. § 30:10(A)(2)(e)(i). Thus, under Section 10(A)(2), the costs of development and operation are chargeable to the owners – including UMOs – within a unit. Finally, and most relevant to the instant dispute, Section 10(A)(3) provides:

> If there is included in any unit created by the commissioner of conservation one or more *unleased interests* for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator *shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale*.

La. R.S. 30:10(A)(3) (emphasis added).

The Louisiana Supreme Court has held that "a quasi-contractual relationship is created between the unit operator and the unleased mineral interest owner with whom

the operator has not entered into contract." Wells v. Zadeck, 2011-1232 (La. 3/30/12), 89 So. 3d 1145, 1149.  Such "relationship is personal and heritable."  Id., citing King v. Strohe, 98–656 (La.App. 3 Cir. 5/8/96), 673 So. 2d 1329, 1339.  When there is no written agreement between the owner and operator, Section 30:10(A)(3) supplies the terms of the contract.  See Taylor v. Smith, 619 So. 2d 881, 887 (La. App. 3d Cir. 1993), writ denied, 625 So. 2d 1038 (La. 1993); see also Dow Constr., LLC v. BPX Operating Co., No. CV 20-9, 2021 WL 4492863, at *6 (W.D. La. Sept. 30, 2021) ("Section 10 was designed to be a comprehensive quasi-contract between mineral interest owners and the operator when they have not otherwise contracted with each other after having their interests forcibly pooled together.").  "Essentially, the operator is entitled to sell the owner's proportionate share of production, but the operator must pay the owner within 180 days of the sale or found to be in breach of the statutory authorization to sell expressly set out in [Section] 30:10(A)."  Smith, 619 So. 2d at 887.  Section 30:10(A) "gives the owner a cause of action in quasi-contract under LSA-C.C. art. 2292, *et seq.*, insofar as the operator, in selling the owner's proportionate share of the oil produced, is acting as a *negotiorum gestor* or manager of the owner's business in selling the oil produced."  Id.; see also King, 673 So. 2d at 1338 ("When there is no lessee, the mineral interest owner must deal directly with the unit operator, with whom he has no contractual relationship. In order to facilitate the sale of the minerals, La. R.S. 30:10(A)(3) provides a quasi-contractual relationship between the unit operator and the mineral interest owner."); J & L Fam., L.L.C. v. BHP Billiton Petroleum Properties (N.A.), L.P, 293 F.Supp. 3d 615, 621 (W.D. La. 2018) ("[T]he Louisiana Third Circuit has held that the statutory protections for unleased owners 'give[ ] the [unleased] owner a cause of action in quasi-contract ...

insofar as the operator, in selling the owner's proportionate share of the oil produced, is acting as a *negotiorum gestor* or manager of the owner's business in selling the oil produced.'").

Louisiana Civil Code Article 2292 provides:

> There is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances.

The obligations of a unit operator as UMOs are imposed "without any agreement," and instead are "imposed by the sole authority of the laws." Smith, 619 So. 2d at 887. Louisiana Civil Code Article 2295, *et seq.*, "sets forth the quasi-contact which results from the transaction by one of another's business." Id. Article 2297 is of particular relevance in this matter and provides:

> The owner whose affair has been managed is bound to fulfill the obligations that the manager has undertaken as a *prudent administrator* and to reimburse the manager for all *necessary and useful expenses*.

La. C.C. Art. 2297 (emphasis added).

**C.      Analysis.**

As stated previously, this case parallels the legal issues presented in Allen Johnson, et al. v. Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543. The parties agree that the issue before the Court is *res nova* because there is no controlling Louisiana case law that deals with the specific facts as presented in this case. The key distinction in this dispute is the status of Plaintiffs as UMOs.

BPX seeks dismissal of Count 1 of the Plaintiffs' complaint which challenges the legality – under Section 10(A)(3) – of an operator charging UMOs for their share of post-production costs.   It contends that the regime of *negotiorum gestio* provides the

mechanism for recovery of BPX's post-production costs irrespective of the ambiguity of "proceeds" in Section 10(A)(3) and that there is no conflict between the provisions of Section 10(A)(3) and Article 2297. BPX argues that post-production costs are both necessary and useful under Article 2297. BPX concedes that the extent or scope of reimbursement remains subject to discovery as to the alternative claims of the Plaintiffs, but that such issues are not before the Court in the instant motion. See Record Document 63 at 15.[3] It submits that "Plaintiffs' claims that all post-production costs – regardless of their necessity and usefulness as recognized by well-settled jurisprudence – are *per se* improperly chargeable is simply wrong as a matter of law." Id. Conversely, the Selfs submit that Section 10(A)(3) is clear and unambiguous and any unilateral decision by an operator such as BPX to deduct post-production costs from UMOs' pro rata share of proceeds of the sale of unit production is in direct violation of the statute.

The Court holds that the doctrine of *negotiorum gestio*, more specifically Article 2297, provides the mechanism for an operator to recover post-production costs from UMOs. Settled Louisiana case law – including a decision from the Louisiana Supreme

---

[3] In its supplemental post-argument briefing, BPX explained:

> Plaintiffs' separate claims can be analogized to the difference between theory and reality. This Motion is aimed at the Plaintiff's novel theory that no matter how necessary or useful, post-production costs are never deductible under any circumstances as a matter of law. If Plaintiffs succeed on their primary claim, the alternative claims which attack the reasonableness of the specific post-production costs become irrelevant and moot. This Motion is not, however, aimed at the reality of the specific post-production costs that were, in fact, charged and the reasonableness analysis associated therewith.

Record Document 63 at 14.

Court – defines the relationship between an operator and UMOs as quasi-contractual and provides that such relationship is governed by not only the provisions of Section 10(A)(3), but also Article 2292, *et seq.* In Wells, the Louisiana Supreme Court held that "a quasi-contractual relationship is created between the unit operator and the unleased mineral interest owner with whom the operator has not entered into contract." Wells, 89 So. 3d at 1149. In Taylor v. Woodpecker Corp., 93-0781 (La. App. 1st Cir. 3/11/94), 633 So. 2d 1308, 1313, a Louisiana appellate court explained:

> We agree that LSA–R.S. 30:10 A(3) gives an unleased landowner a cause of action in quasi-contract under these Civil Code articles. The unit operator acts as a *negotiorum gestor* or manager of the owner's business in selling the owner's proportionate share of oil and gas produced. In return for the right to sell the share of production of the unleased landowner, the unit operator is obligated by law "without any agreement" to pay the unleased landowner his proportionate share of proceeds within 180 days of the sale of production. The "purely voluntary act" of assuming the position of unit operator, and thereby obtaining the right to sell the unleased interest owner's share of production, results in this obligation to account to the unleased interest owner pursuant to LSA–R.S. 30:10 A(3).

Moreover, the Court is convinced that Section 10(A)(3) and Article 2297, which provides that a manager acting as a prudent administrator can recover necessary and useful expenses, can be read in harmony and are not in conflict. The statute's silence as to post-production costs is not enough to create conflict and/or displace other applicable provisions of the Civil Code, i.e., positive law. For instance, in J & L Fam., L.L.C., 293 F.Supp.3d at 621, a sister court within the Western District of Louisiana looked to quasi-contractual provisions of the Civil Code to determine if the UMO could recover attorney fees. The court reasoned:

> [T]he Louisiana Third Circuit has held that the statutory protections for unleased owners "give[ ] the [unleased] owner a cause of action in quasi-contract ... insofar as the operator, in selling the owner's proportionate share of the oil produced, is acting as a *negotiorum gestor* or manager of the owner's business in selling the oil produced." Taylor v. David New Operating

> Co., 619 So. 2d 1251, 1255 (La. Ct. App. 1993) (citing La. Stat. Ann. § 30:10(A)(3) ). J & L construes BHP's obligations as arising under the same statute interpreted by the Third Circuit. [Record Documents 1–2 at 10 and 58 at 5]. However, the quasi-contract provisions of the Civil Code do not provide for the fee recovery. See La. Civ. Code Ann. bk. III, tit. V, chs. 1–2 (2010). Therefore, there is no statutory authority for the Court to award attorney fees for any alleged breach of BHP's quasi-contractual obligations.

Id. at 621. This rationale supports this Court's finding that quasi-contractual provisions of the Civil Code can provide the mechanism for operator's to recover post-productions costs from UMOs.[4]

The parties have also focused on the meaning of "proceeds" as used in Section 10(A)(3) and whether such term is ambiguous. The statute provides in pertinent part, "the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale." La. R.S. 30:10(A)(3). BPX acknowledges that "proceeds" is ambiguous, but submits that the regime of *negotiorum gestio* provides for recovery of its post-production costs irrespective of the ambiguity of "proceeds." Record Document 63 at 9-13. The Selfs argue Section 10(A)(3) is unambiguous and that the phrase "the proceeds of the sale" has a generally prevailing meaning both in ordinary and technical language, that is, "the entire amount of sales revenue, or what BPX terms 'gross proceeds.'" Record Document 17 at 8. However, the Court does not believe it has to decide whether "proceeds," as used in Section 10(A)(3), means "net" or "gross." When Section 10(A)(3) is read in harmony with

---

[4] At this stage, the Court makes no findings as to what operator actions fall in line with those of a prudent administrator and/or what post-productions costs qualify as necessary and useful expenses under Article 2297.

the quasi-contractual principles set forth in the Civil Code,[5] UMOs simply cannot be relieved of certain other obligations that can be applied against the amount received. Pursuant to La. R.S. 47:635(2)(C), operators are authorized to withhold severance taxes from payments of "proceeds" to UMOs and this Court can find no plausible explanation why severance taxes can be deducted from "proceeds," but post-productions costs cannot. See La. R.S. 47:635(2)(C); see also J. Fleet Oil & Gas Corp., L.L.C. v. Chesapeake Louisiana, L.P., No. CV 15-2461, 2018 WL 1463529, at *6 (W.D. La. Mar. 22, 2018) ("Post-production costs are those costs and expenses incurred after the production has been discovered and delivered to the surface of the earth. Such 'subsequent to production' costs generally include those related to taxes, transportation, processing, dehydration, treating, compression, and gathering.").

The Court believes that the instant ruling harmonizes Section 10(A)(3) and Article 2297 and applies *in pari materia* statutory construction rules. The ruling is likewise consistent with how both parties agree severance taxes function in relation to operators and UMOs. Moreover, the Court finds no reason to treat UMOs differently in the specific context of post-production costs. In TDX, 587 F.3d at 263, the Fifth Circuit discussed certain greater protections given to UMOs, such as exemption from the risk charge. Likewise, other courts have focused on the UMOs' right to "in cash balancing" rather than

---

[5] Article 13 provides "laws on the same subject matter must be interpreted in reference to each other." La. C.C. Art. 13. When statutes seem to be in conflict, Article 13 makes it the court's "duty to harmonize and reconcile the acts if possible." State v. Walker, 97-0330 (La. 10/21/97), 700 So. 2d 496, 498. While the starting point for interpretation of a statute is the language of the statute itself, "all laws pertaining to the same subject matter must be interpreted *in pari materia*, or in reference to each other." Jackson v. Fam. Dollar Stores of Louisiana Inc., 2018-0170 (La. 6/27/18), 251 So. 3d 368, 370-371.

"in kind" balancing. See Hunt Oil, 644 So.2d at 200 n.16; King, 673 So.2d at 1338. This Court believes it must look to the nature of the specific protection claimed and finds that to disallow the deduction of post-productions costs from UMOs would lead to "free riding." TDX, 587 F.3d at 258. Thus, BPX's Motion for Partial Dismissal is **GRANTED**, as the Plaintiffs have failed to state a legally cognizable claim, that is, the primary claim that no post-production costs of any kind can ever be deducted from a UMO who chooses not to market their gas fails as a matter of law. Instead, the Court holds that the doctrine of *negotiorum gestio* – as set forth in Louisiana Civil Code Article 2292, *et seq.* – governs the quasi-contractual relationship between an operator and UMOs, thereby providing the mechanism for reimbursement of post-production costs incurred by an operator to market the UMO's gas.

D.    **Interlocutory Appeal Certification Pursuant to 28 U.S.C. § 1292(b).**

In its supplemental post-argument brief, BPX seeks an interlocutory appeal from the instant order pursuant to 28 U.S.C. § 1292(b). See Record Document 63 at 16-19. BPX also notes that counsel for the Selfs, who also serve as counsel for the Plaintiffs in the related case of Allen Johnson, et al. v. Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543, have agreed that this case presents issues appropriate for immediate interlocutory appeal. See id. at 19 n.41. Thus, the Court considers the request to be joint.

> Section 1292(b) provides:
>
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction

>of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292.  The Section 1292(b) standard requires that: "(1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation."  Matter of Ichinose, 946 F.2d 1169, 1177 (5th Cir. 1991).  All three grounds must exist in order for the Court to consider and grant an interlocutory appeal.  The Court believes all three grounds are satisfied in this matter.

The instant motion puts the viability of Plaintiffs' primary claim directly at issue.  This purely legal issue must be resolved in the context of a complex gas marketing class action and it would be inefficient for both the parties and the Court for there to be extensive and lengthy discovery, a contested certification hearing, and a prolonged trial, only for the appellate court to reverse the Court's ruling as to the deduction of post-production costs from UMOs' pro rata share of proceeds.  A controlling issue of law is clearly presented in both the instant motion and in the recently decided motion for reconsideration in Allen Johnson, et al. v. Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543.  A substantial ground for difference of opinion exists in this matter as the undersigned granted a motion for reconsideration in Allen Johnson, et al. v. Chesapeake Louisiana, LP, et al., Civil Action No. 16-1543, thereby changing its own opinion, and all parties agree the issue presented is *res nova*.  Finally, the Court believes an immediate appeal may materially advance the ultimate termination of the litigation, as the threshold issue presented in the instant motion will inevitably be appealed at the conclusion of the case.

Moreover, the instant action – while filed in 2019 – remains at an early stage and minimal discovery has occurred.  The request to certify the instant order for interlocutory appeal pursuant to Section 1292(b) is **GRANTED**.

## CONCLUSION

Based on the foregoing analysis, BPX's Motion for Partial Dismissal (Record Document 9) is **GRANTED**, as the Plaintiffs have failed to state a legally cognizable claim, that is, the primary claim that no post-production costs of any kind can ever be deducted from a UMO who chooses not to market their gas fails as a matter of law.  Instead, the Court holds that the doctrine of *negotiorum gestio*, allows operators such as BPX the mechanism and ability to recover post-production costs from UMOs.  Moreover, based on the aforementioned rationale, the instant ruling is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 31st day of March, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT