**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JAMES SELF, ET AL. | CIVIL ACTION NO. 19-0927 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BPX OPERATING, CO., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant BPX Operating Company's ("BPX") Second Rule 12(b)(6) Motion for Partial Dismissal of Count 1. See Record Document 89. BPX's motion seeks dismissal of Plaintiffs' claim that post-production costs are not properly deductible from proceeds due to an unleased mineral interest owner ("UMO") pursuant to Louisiana Revised Statute 30:10(A)(3) ("La. R.S. 30:1(A)(3)"). See id. The motion is opposed by Plaintiffs James and Wilma Self ("the Selfs"). See Record Document 97. BPX has filed a reply. See Record Document 100.

The instant motion also came on for oral argument in February 2025. See Record Document 108. Post-argument briefing was submitted by both parties. See Record Documents 109 & 112. BPX also filed two notices of supplemental authority regarding the United States Court of Appeals for the Fifth Circuit's June 9, 2025 opinion, Dow Construction, LLC v. BPX Operating Company, 140 F.4th 246 (5th Cir. 2025). See Record Documents 113 & 114.

For the reasons set forth below, BPX's motion is **GRANTED** and the Court holds that post-production costs may be lawfully assessed to proceeds owed to unleased mineral owners by an operator marketing under La. R.S. 30:10(A)(3).

## BACKGROUND

The Selfs filed the instant action as purported representatives of a named putative class of UMO plaintiffs who own unleased mineral interests in the State of Louisiana which are situated within compulsory drilling units formed by the Louisiana Office of Conservation and operated by BPX. See Record Document 1-3 at ¶1. As to the Selfs, the subject unit is HA RA SUE Unit in Section 11, Township 13 North, Range 10 West, Bracky Branch Field, Red River Parish ("HA RA SUE Unit"). See id. at ¶ 20. The subject well for the HA RA SUE Unit is the Nichols, et ux 11H-2, LA Serial No. 243945. See id. The Selfs own a tract of land within the HA RA SUE Unit. See id. at ¶ 21. Similarly, members of the putative class own tracts of land, and/or rights to explore for and produce minerals therefrom, situated in other compulsory drilling units. See id. at ¶ 22. BPX is the operator for all of the unit wells at issue. See id.

Neither the Selfs nor the class have made separate arrangements to dispose of their allocable shares of production from the units. See id. at ¶ 2. BPX, as operator of the units, has opted to market, on behalf of the Selfs and the putative class members, each UMO's proportionate share of production. See id. at ¶ 3. La. R.S. 30:10(A)(3) provides:

> If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator *shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production* within one hundred eighty days of such sale.

La. R.S. 30:10(A)(3) (emphasis added). The Selfs allege that BPX has failed to pay them and the class their pro rata share of the proceeds of the sales of production from the units

in which they own unleased mineral interests. See Record Document 1-3 at ¶ 5. The Selfs allege that BPX has been improperly deducting against the sale proceeds certain post-production costs and that such practice is improper *per se*. See id. at ¶ 6. They seek declaratory and permanent injunctive relief to enjoin BPX from deducting post-production costs from their allocable shares of production proceeds under Section 10(A)(3). See id. at ¶ 36. They also seek damages equal to the total amount of post-production costs improperly deducted from/charged to the share of proceeds. See id.

In March 2022, this Court granted BPX's First Motion to Dismiss and dismissed Plaintiffs' Count I, holding "that the doctrine of *negotiorum gestio* – as set forth in Louisiana Civil Code Article 2292, *et seq.* – governs the quasi-contractual relationship between an operator and UMO, thereby providing the mechanism for reimbursement of post-production costs incurred by an operator to market the UMO's gas." Record Document 72 at 1-2. This ruling was certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). See id. at 13-15. The Fifth Circuit granted the motion for leave to appeal an interlocutory order. See Record Document 74.

On September 8, 2023, the Fifth Circuit certified the following question to the Louisiana Supreme Court: "Does La. Civ. Code art. 2292 apply to unit operators selling production in accordance with La. R.S. 30:10(A)(3)?" Self v. BPX Operating Company, 80 F.4th 632, 637 (5th Cir. 2023). In June 2024, the Louisiana Supreme Court answered the certified question, holding that *negotiorum gestio* is incompatible with La. R.S. 30:10(A)(3) on the grounds that the operator is selling the UMO's share of production pursuant to statutory authority. See Self v. BPX Operating Company, 2023-1242 (La. 6/28/24), 388 So.3d 366, 369. Thus, a unit operator who is production in accordance with

Section 30:10(A)(3) cannot be a *gestor* because a *gestor* is one who acts "without authority." Id.

Consequently, on September 19, 2024, the Fifth Circuit vacated this Court's order granting BPX's First Motion to Dismiss and remanded the case for further proceedings. See Self v. BPX Operating Company, No. 22-30243, 2024 WL 4273824, at *1 (5th Cir. 2024). After a telephone status conference with this Court, BPX filed the instant Second Rule 12(b)(6) Motion for Partial Dismissal of Count I. See Record Documents 86 & 89. Like its previous Rule 12(b)(6) motion, the instant motion is narrowly drawn and offers alternate legal theories for recovery of its post-production costs. See Record Document 89. BPX offers co-ownership, tacit mandate, legal representation, and unjust enrichment as codal bases for the legal reimbursement of post-production costs from UMOs.[1] BPS further argues that to uphold Plaintiffs' position that post-production costs cannot be withheld from UMOs' proceeds would lead to absurd results that are irreconcilable with La. R.S. § 30:10.

After oral argument in this matter concluded, the Fifth Circuit issued the Dow opinion, 146 F.4th 246. BPX contends that Dow "is definitive precedent from the Fifth Circuit that provides additional grounds for granting BPX's Second Rule 12(b)(6) Motion for Partial Dismissal of Count I." Record Document 114 at 1. Plaintiffs filed no response to BPX's Notices of Supplemental Authority regarding the Dow decision.

[1] BPX also identified good faith possessor of products as an alternative codal basis, but that theory was withdrawn at oral argument.

## LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard.

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now the "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S.Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. If the complaint does not meet this standard, it can be dismissed

for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 550 U.S. at 558, 127 S.Ct. at 1966 (citations omitted).

**B. Relevant Statutory and Codal Schemes.**

Louisiana is one of many states that has forced pooling laws. Louisiana's Commissioner of Conservation may join separate tracts of land into a forced drilling unit "whenever necessary to prevent waste or avoid needless drilling, even if owners of oil and gas interests have not agreed to pool their interests." TDX Energy, L.L.C. v. Chesapeake Operating, Inc., 857 F.3d 253, 257 (5th Cir. 2017), citing La. R.S. §§ 30:9(B), 30:10(A)(1).[2] Once a unit has been established, the Commissioner may appoint an operator to extract oil and gas from a reservoir. See id., citing Hunt Oil Co. v. Batchelor, 93-3144 (La. 10/17/94), 644 So. 2d 191, 196. "The operator is responsible for drilling within the unit but pays a proportionate share of production to owners of oil and gas interests for any acreage on which the operator does not have an oil and gas lease." Id. at 257-258, citing La. R.S. § 30:10(A)(1)(b); Amoco Prod. Co. v. Thompson, 516 So. 2d 376, 392 (La. App. 1st Cir. 1987).

"As a corollary to this scheme for sharing the benefits of unit production in the absence of a contract, Louisiana law contains mechanisms for sharing drilling risks and costs." TDX, 857 F.3d at 258. La. R.S. § 30:10(A)(2) (emphasis added) provides:

> In the event pooling is required, the *cost of development and operation* of the pooled unit chargeable to the owners therein shall be determined and recovered as provided herein.

[2] Title 30 of the Louisiana Revised Statutes governs minerals, oils, and gas and environmental quality. More specifically, La. R.S. § 30:10 governs agreements for drilling units and pooling interests.

"To prevent free riding, the statute creates a mechanism for sharing the risk that a well, once drilled, will not produce enough to cover drilling costs." TDX, 857 F.3d at 258. "The operator gives notice to oil and gas interest owners regarding the drilling of a well, allowing owners to elect to participate in the risk by contributing to drilling costs up front." Id., citing La. Stat. Ann. § 30:10(A)(2)(a)(i). "If an owner does not participate, and the well produces, the operator can recover out of production the nonparticipating owner's share of expenditures [i.e., the actual reasonable expenditures incurred in drilling, testing, completing, equipping, and operating the unit well, including a charge for supervision], along with a risk charge of two hundred percent of the owner's expenditure share." Id., citing La. R.S. § 30:10(A)(2)(b)(i). However, Section 10(A)(2)(e) later provides that completely unleased mineral owners are exempt from the risk charge. See La. Stat. Ann. § 30:10(A)(2)(e)(i). Thus, under Section 10(A)(2), the costs of development and operation are chargeable to the owners – including UMOs – within a unit. Finally, and most relevant to the instant dispute, Section 10(A)(3) provides:

> If there is included in any unit created by the commissioner of conservation one or more *unleased interests* for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator *shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale*.

La. Stat. Ann. § 30:10(A)(3) (emphasis added).

Additionally, pursuant to La. R.S. 30:103.1, at an unleased owner's request, operators must issue reports containing sworn statements about the drilling and operating costs, amount of production, and price received for sale of production. See Dow, 140 F.4th at 249. If the operator does not provide this information within ninety days of

completing a well, and thirty additional days lapse after receiving notice of its failure to comply with its reporting obligation, then the operator forfeits its right to demand contribution for the costs of the drilling operations. See La. Stat. Ann. § 30:103.2.

**C. Dow Construction, LLC v. BPX Operating Company, 140 F.4th 246 (5th Cir. 2025).**

In Dow, the Fifth Circuit considered four issues: "A) whether § 30:10(A)(3) applies to any mineral interest owner in a forced pool unit who has no lease whatsoever or who specifically has no lease with the operator of the well; B) whether § 30:10 precludes operators from seeking reimbursement of post-production costs incurred by operators when they market an unleased owner's share of production; C) whether post-production costs are included within the forfeiture provision, § 30:103.2; and D) whether § 30:103.2 is subject to a one-year or ten-year perspective period." Dow, 140 F.4th at 250. The court first held that La. R.S. 30:10(A)(3) applies to mineral interest owners who are unleased as to the well operator. See id. at 253. As to post-production costs, the Fifth Circuit vacated the district court's order insofar as it granted BPX partial summary judgment based on the holding that *negotiorum gestio* allows operators to recover post-production costs incurred to market the mineral interest owner's share of production, and remanded for further proceedings consistent with the Louisiana Supreme Court's opinion. See id. As to the fourth issue, the court concluded that La. R.S. 30:103.2 is subject to the one-year prescriptive period that applies to delictual claims. See id. at 256.

In regards to the instant matter, the Fifth Circuit's holding on the third issue – that post-production costs are included within the forfeiture provision of La. R.S. 30:103.2 – is significant. Section 103.2 provides that when an operator fails to timely provide the information required of them by La. R.S. 30:103.1, the operator loses the "right to demand

contribution from the owner or owners of the unleased oil and gas interests for the *costs of the drilling operations* of the well." La. Stat. Ann. § 30:103.2 (emphasis added). Section 103.1, in turn, provides that:

> A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
>
> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
>
> (2) After establishment of production from the unit well, quarterly reports which shall contain the following:
>
> (a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
>
> (b) The price received from any purchaser of unit production.
>
> (c) Quarterly operating costs and expenses.
>
> (d) Any additional funds expended to enhance or restore the production of the unit well.
>
> ...
>
> D. Notwithstanding any other provision of this Section to the contrary, at the time a report is due pursuant to this Section, if the share of the *total costs of drilling, completing, and equipping the unit well and all other unit costs* allocable to an owner of an unleased interest is less than one thousand dollars, no report shall be required. However, during January of the next calendar year, the operator or producer shall report *such costs* to the owner.

La. R.S. § 30:103.1 (emphasis added). The Fifth Circuit described the interplay between Sections 103.1 and 103.2:

> Section 103.2 adds teeth to § 103.1; it disincentivizes operators' failure to comply with § 103.1's reporting requirements. Taken together, §§ 103.1 and

> 103.2 address an information asymmetry that arises from the forced pooling of mineral resources when there is no lease or contract between the operator and the owner of the oil and gas .... Thus, §§ 103.1 and 103.2 help remedy the information asymmetry by creating an enforceable mechanism for nonoperators that have unleased interests in the minerals to obtain an accounting of what the operator is doing.

Dow, 140 F.4th at 254, citing B. A. Kelly Land Co. v. Aethon Energy Operating, L.L.C., 25 F.4th 369, 376 (5th Cir. 2022) (citations and internal quotation marks omitted).

The parties in Dow disputed "which costs are covered by the phrase 'costs of drilling operations' in § 103.2." Dow, 140 F.4th at 254. BPX argued the phrase only encompassed the enumerated set of specific drilling costs. See id. Conversely, Dow asserted that "costs of the drilling operations" refers back to the expenditures referenced in Section 103.1. Id. Dow further argued that "operating costs and expenses" and "funds expended to enhance . . . the production of the unit well," capture post-production costs; therefore, Dow maintained that "costs of [the] drilling operations" includes post-production costs as well. See id.

The Fifth Circuit looked to Louisiana case law for guidance and relied upon XXI Oil & Gas, LLC v. Hilcorp Energy Co., 2016-269 (La. App. 3 Cir. 9/28/16), 206 So. 3d 885. "There, the Louisiana Third Circuit Court of Appeal held that the penalty for 'costs of the drilling operations' include[d] both pre-and post-production costs." Dow, 140 F.4 at 254, citing XXI Oil & Gas, 206 So. 3d at 890. The Louisiana appellate court considered legislative history and "determined that the legislature used the phrase 'cost of the drilling operations' to refer back to the expenditures referenced in § 103.1." Id., citing XXI Oil & Gas, 206 So. 3d at 890. The rationale underlying the determination was that the term "drilling operations" connotes both drilling and operational aspects of taking and producing oil and gas from land because otherwise, "there would be no incentive for the

operator or producer to provide the quarterly reports." Id., citing XXI Oil & Gas, 206 So. 3d at 890.

The Fifth Circuit further reasoned that the text of § 103.1 "requires reporting multiple categories of costs that could encompass post-production costs." Id. at 255. For example, the court believed it was reasonable to classify post-production costs as "operating costs and expenses" under § 103.1(A)(2)(c) because they form an integral part of the overall business operations. Id. The value of minerals is contingent upon a series of post-production actions, such as transportation, marketing, processing, dehydration, treatment, compression, and collection, that must be taken to render the minerals useful. See id. The Fifth Circuit further held that its interpretation was consistent with the purpose of Louisiana's forced-pooling statutory scheme, that is, to remedy information asymmetry. See id. The court believes that "to accept BPX's argument would mean reading an information asymmetry safe haven into a statute created to remedy information asymmetries." Id.

**D. Analysis.**

In Dow, the Fifth Circuit held that post-production costs are included in the forfeiture provision of Section 103.2 as "operating costs and expenses" under Section 103.1(A)(2)(c) and as "all other unit costs allocable to an owner" under Section 103.1(D). Dow, 140 F.4th at 255. This finding necessarily indicates post-production costs are legally chargeable to the UMO in the first instance; thus, this Court finds post-production costs are deductible from a UMO's proceeds.

This Court believes that a contrary holding would lead to absurd results. Under Dow, Louisiana's statutory scheme requires an operator to report post-production costs

and/or forfeit the right to demand post-production costs from the owner. If an operator does not have the right to withhold post-production costs, there would be no reason for the operator to report post-production costs. Likewise, there would be no right relative to post-production costs that could be forfeited by the operator under Section 103.2. There can be no reporting or forfeiture of costs for which an operator bears full responsibility.

Dow construed the meaning of operating costs consistently within the confines of both La. R.S. 30:10 and La. R.S. 30:103.1 *et seq.*, thereby promoting statutory harmony and the consistent interpretation of conservation laws.[3] In a case that parallels the instant matter, counsel for Plaintiffs preciously argued:

> However, if the Court does agree with Chesapeake that marketing expenses are operating costs and therefore deductible, Plaintiffs request that such holding be accompanied by a ruling that Chesapeake has failed to live up to its reporting requirements under La. R.S. 30:103.1. Without such a ruling, Plaintiffs would be left with an inconsistent and absurd result: marketing costs are deductible "operating costs" under 30:10A(2) but are not "operating costs" that must be reported under 30:103.1. If Chesapeake is right that marketing costs are operating expenses, consistent interpretation of the conservation laws compels the conclusion that Chesapeake has failed to comply with 30:103.1 by not including such costs in its reports.

Record Document 28-2 at 26-2, Allen Johnson, et al. v. Chesapeake Louisiana, L.P., et al., 5:16-cv-1543. Here, because operating costs are interpreted consistently as to both La. R.S. 30:10 and La. R.S. 103.1 *et seq.*, it is clear that post-production costs are

[3] Article 13 provides "laws on the same subject matter must be interpreted in reference to each other." La. C.C. Art. 13. When statutes seem to be in conflict, Article 13 makes it the court's "duty to harmonize and reconcile the acts if possible." State v. Walker, 97-0330 (La. 10/21/97), 700 So. 2d 496, 498. While the starting point for interpretation of a statute is the language of the statute itself, "all laws pertaining to the same subject matter must be interpreted *in pari materia*, or in reference to each other." Jackson v. Fam. Dollar Stores of Louisiana Inc., 2018-0170 (La. 6/27/18), 251 So. 3d 368, 370-371.

deductible as operating costs under La. R.S. 30:10(A)(2)(b)(i).[4] Dow, therefore, provides the bases within conservation law to support the legal deductibility of post-production costs against UMOs claiming cash under La. R.S. 30:10(A)(3).

## CONCLUSION

Based on the foregoing analysis, BPX's Second Rule 12(b)(6) Motion for Partial Dismissal of Count 1 (Record Document 89) is **GRANTED**, as the Fifth Circuit's 2025 Dow opinion provides the bases within conservation law to support the legal deductibility of post-production costs against UMOs claiming cash under La. R.S. 30:10(A)(3).

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 25th day of September, 2026.

S. Maurice Hicks, Jr.

United States District Judge

[4] In J. Fleet Oil & Gas Corp., LLC v. Chesapeake La., L.P., No. 15-2461, 2019 WL 13219402, *4 (W.D. La. June 7, 2019), in which this Court held, in the context of construing a Participation Agreement, that "operating expenses" are a type of production cost and therefore do not encompass post-production costs. Nevertheless, the Fifth Circuit's ruling in Dow functionally overrules this Court's conclusion, at least insofar as the term "operating expenses" is used in La. R.S. 30:10 and La. R.S. 30:103.1.